UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELTER COVE MARINA, LTD., a California Limited Partnership,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>M/Y ISABELLA, U.S.C.G. Official No. 1192004, an 81.6-Foot, 1952 Feadship Motor Yacht, AND ALL OF HER ENGINES, TACKLES, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, in rem,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 3:17-cv-01578-GPC-BLM<br><br>**ORDER GRANTING MOTION FOR INTERLOCUTORY VESSEL SALE AND AUTHORIZATION TO CREDIT BID**<br><br>**[ECF No. 20]** |

Before the Court is Plaintiff Shelter Cove Marina's ("Shelter Cove") motion for interlocutory vessel sale and authorization to credit bid. (ECF No. 20.) The motion is unopposed. For the reasons set forth below, the Court **GRANTS** Shelter Cove's motion.

**I.　　Background**

This is an *in rem* action against the vessel S/V Isabella, U.S.C.G. Official Number 1192004 ("Defendant Vessel"), which is—according to the verified complaint—owned by Ocean Bay Charters, LLC. (ECF No. 1 at 2 ¶ 3.) The President of Ocean Bay Charters is Tom Kelley. (*Id.*) On September 15, 2015, Kelley executed a wharfage

1

contract with Shelter Cove. (*Id.* at 2 ¶ 5.) Under the agreement, Shelter Cove provided wharfage services for Defendant Vessel. (*Id.*) Since November 2016, however, no one has paid the accruing wharfage fees resulting from Shelter Cove's services to Defendant Vessel. (*Id.* at 2 ¶ 6.) On February 21, 2017, Shelter Cove sent a letter to Kelley demanding payment and threatening to cancel the contract; no payment was offered in response, and as a result, Shelter Cove terminated the contract. (*Id.* at 3 ¶¶ 7–8.) At the time Shelter Cove filed its complaint, the account for Defendant Vessel stood in arrears by as much as $37,209.88. (*Id.* at 3 ¶ 10.)

In light of this nonpayment, Shelter Cove filed this action on August 4, 2017, asserting claims of breach of a maritime contract, trespass, and *quantum meruit*. (*See generally id.*) On August 14, 2017, the Court authorized the arrest of Defendant Vessel and substituted Shelter Cove as custodian. (ECF No. 5.) Because no pleadings were filed in response to Shelter Cove's complaint, and upon Shelter Cove's motion, the Clerk of Court entered default against Defendant Vessel on October 18, 2017. (ECF No. 19.)

In the pending motion, Shelter Cove asks the Court to order the United States Marshal Service to sell Defendant Vessel at public auction so as to satisfy Shelter Cove's maritime liens resulting from Defendant Vessel's account arrearage. Shelter Cove also seeks authorization to credit bid on Defendant Vessel.

**II.    Legal Standards**

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Cal. Yacht Marina—Chula Vista, LLC v. S/V OPILY*, No. 14-cv-1215-BAS-BGS, 2015 WL 1197540, at *2 (S.D. Cal. Mar. 16, 2015) (quoting *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983)). The Federal Rules of Civil Procedure's Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(a)(i) states:

> On the application of a party, . . . the court may order all or part of the property sold—with the sales proceeds, or as much as will satisfy the

> judgment, paid into court to await further orders of the court—if: (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive of disproportionate; or (C) there is an unreasonable delay in securing release of the property.

As indicated by the disjunctive nature of Rule E(9)(a)(i), Shelter Cove need show just one of these criteria to obtain an interlocutory sale. *See Cal. Yacht Marina—Chula Vista*, 2105 WL 1197540, at *2.

As for Shelter Cove's request for authorization to submit a credit bid, this Court's Local Civil Rule E.1(e)(2) states:

> When the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

### III. Discussion

#### A. Interlocutory Sale of Defendant Vessel

##### i. Liability to Deterioration

Shelter Cove contends that the Court should grant the interlocutory sale of Defendant Vessel because the vessel's condition is deteriorating by sitting idle. Shelter Cove offers the declaration of Ray Jones, a professional yacht broker, who states that the inevitable deterioration of a vessel "is exacerbated when vessels (as in this case) sit idle for extended periods in a salt water environment." (ECF No. 20-3 at 2 ¶ 2.) "[W]hile an arrested vessel sits idle, her engines, generators and other equipment are not operated under load (if at all), and . . . such disuse can detrimentally impact the condition and value of such vessel." (*Id.*) After reviewing pictures of Defendant Vessel, Jones asserts that he "believe[s] that if [Defendant Vessel] is permitted to lay idle without routine maintenance and

without proper lay-up preparations, the vessel's engines might (even if now operational) rust and freeze up, necessitating costly overhaul." (*Id.* at 2 ¶ 3.) According to Jones, the longer Defendant Vessel sits idle, "the greater the deterioration will be," and as a result, "in the interest of preserving the value of the Defendant Vessel, she should be sold as soon as possible." (*Id.*)

In light of Jones's analysis—the veracity of which the Court has no reason to doubt—the Court finds that Defendant Vessel is liable to deterioration or injury if it remains arrested during the pendency of this action. *See Cal. Yacht Marina— Chula Vista*, 2015 WL 1197540, at *3.

### ii. Unreasonable Delay in Securing Release

Under Supplemental Admiralty Rule E(4)(f), a person claiming an interest in arrested property is entitled to a prompt hearing. But, as Shelter Cove notes, in this case "no person or entity has answered or otherwise responded to the Verified Complaint, posted or sought to post security for the release of the Defendant Vessel, or requested a prompt hearing" under Rule E(4)(f). (ECF No. 20-2 at 6.) As a result, the Court agrees with Shelter Cove that there is little chance anyone will, at this point, seek to secure the release of Defendant Vessel. (*See id.*)

Before granting an interlocutory sale, however, the Court must permit "defendants sufficient time to provide a bond to secure the vessel's release." *Cal. Yacht Marina— Chula Vista*, 2015 WL 1197540, at *4. The Court finds that sufficient time for anyone with an interest in Defendant Vessel to provide such a bond has passed. This Court issued the order granting the arrest of Defendant Vessel on August 14, 2017 (ECF No. 5), and the warrant was returned executed on August 18 (ECF No. 7). Nearly four months have now passed since Defendant Vessel's arrest. Courts in this circuit have found four months to be adequate in this context. *See, e.g.*, *Vineyard Bank v. M/Y Elizabeth I*, No. 08-cv-2044, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009). The Court therefore finds that there has been an unreasonable delay in securing Defendant Vessel's release.
//

### iii. Excessive or Disproportionate Maintenance Expense

Shelter Cove also asserts that maintaining Defendant Vessel imposes excessive and disproportionate expense. "Maintenance expenses of several thousand dollars per month, particularly where a defendant has made no attempt to answer the complaint or secure the vessel's release, are excessive and disproportionate." *Cal. Yacht Marina—Chula Vista*, 2015 WL 1197540, at *4. That is the case here. Jones states in his declaration that Defendant Vessel's fair market will not exceed $62,500. (ECF No. 20-3 at 2 ¶ 4.) In light of the Court's setting a rate of $243 per day[1] compensation for maintenance services, the substitute custodian fees to date since Defendant Vessel was arrested exceed $18,000. (*See* ECF No. 20-2 at 8.) Assuming Jones's valuation is correct, the maintenance expenses so far amount to almost 30 percent of Defendant Vessel's total value. (*See id.* at 8.) In light of the fact that these expenses will continue, and there is no reason to believe Defendant Vessel will increase in value in the future, the Court finds that the maintenance expenses are excessive and disproportionate to Defendant Vessel's value. *Cf. Cal. Yacht Marina—Chula Vista*, 2015 WL 1197540, at *4; *Vineyard Bank*, 2009 WL 799304, at *2.

### B. Credit Bid

According to Shelter Cove, no party other than Shelter Cove has asserted a maritime lien claim against Defendant Vessel. (ECF No. 20-2 at 9.) As the only claimant, Shelter Cove is therefore the senior-most claimant, and is entitled, under Local Admiralty Rule E.1(e)(2), to bid an amount up to its lien amount. Shelter Cove's lien

---

[1] It appears that in its August 14, 2017 order, the Court miscalculated the services fees applicable for Shelter Cove's care of Defendant Vessel. After setting respective rates of $2.50 and $0.50 per foot of the vessel length for wharfage and custodial services, the Court erroneously indicated that Defendant Vessel was 87 feet, and therefore calculated the wharfage and custodial fees to be $217.50 and $43.50 per day. (ECF No. 5 at 8.) Defendant Vessel is, however, 81 feet. (ECF No. 1 at 2 ¶ 3.) As a result, the appropriate wharfage service fee is $202.50 per day ($2.50 x 81 feet = $202.50), and custodial service fee $40.50 per day ($0.50 x 81 feet = $40.50). Together, these fees add up to $243.00 per day.

consists of the $37,209.88 arrearage attested to in its verified complaint (ECF No. 1 at 3 ¶ 10), plus "actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian and other *custodia legis* expenses" as specified by this Court's August 14 order, "to be calculated through the date of the vessel sale" (ECF No. 20-2 at 10). Shelter Cove does not request to include in its credit bid its attorneys' fees. (*Id.*)

Provided that Shelter Cove complies with Local Admiralty Rule E.1(e)(2) by establishing the total amount of the secured indebtedness by affidavit, and filing and serving on all other parties such an affidavit no later than seven (7) days prior to the date of the sale, the Court **GRANTS** Shelter Cove authority to credit bid at the auction of Defendant Vessel.

## IV. Conclusion

For the reasons discussed above, Shelter Cove's motion for interlocutory sale and authorization to credit bid (ECF No. 20) is **GRANTED**.

**IT IS HEREBY ORDERED** that:

1. Consistent with Supplemental Admiralty Rule E(9)(B) and Local Admiralty Rule E.1(e) the United States Marshal be and hereby is directed and empowered to sell said DEFENDANT VESSEL and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale;

2. Such public notice specify the date, time and location for the sale of the DEFENDANT VESSEL;

3. Consistent with Local Admiralty Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified

check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays;

4. Any proceeds of said sale shall be held by it or deposited by the United States Marshal in the Registry of this Court, pending further Order of this Court;

5. Shelter Cove, having a secured maritime lien interest in the Defendant Vessel pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. section 31301, *et seq*.) and being the only claimant in this action asserting a maritime claim against her, is authorized pursuant to Local Admiralty Rule E.1(e)(2) to credit bid at the auction of the DEFENDANT VESSEL, without payment of cash, a sum equal to its secured interest in the Defendant Vessel, consisting of the lien amount specified in Shelter Cove's Verified Complaint ($37,209.88), plus its actual costs of suit through the date of the sale, including U.S. Marshal and other *custodia legis* expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel.  However, as Plaintiff's maritime necessaries lien interest in the DEFENDANT VESSEL does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes; and

6. Pursuant to Local Supplemental Admiralty Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase.

**IT IS SO ORDERED.**

Dated: November 29, 2017

Hon. Gonzalo P. Curiel
United States District Judge